UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:17-CV-00037-GNS

PHARMACY CORPORATION OF
AMERICA, et al.                                                                                    PLAINTIFFS

v.

CONCORD HEALTHCARE GROUP,
LLC, et al.                                                                                        DEFENDANTS

## MEMORANDUM OPINION & ORDER

This matter is before the Court upon Plaintiffs' Motion for Entry of Agreed Orders of Judgment (DN 5), which is ripe for adjudication. For the reasons discussed below, the motion is **GRANTED IN PART** and **DENIED IN PART**.

### I.     BACKGROUND

This action arises out of two settlement and forbearance agreements between Defendants Concord Healthcare Group, LLC ("Concord"); Waco Healthcare Residence, LLC d/b/a Crestview Healthcare Residence ("Waco"); Fairview Operations, LLC d/b/a Fairview Healthcare Residence ("Fairview"); Manor Nursing & Rehab Center, LLC d/b/a The Manor Healthcare Residence ("Manor"); Western Hills Nursing & Rehab Center, LLC d/b/a Western Hills Healthcare Residence ("Western Hills"); Groesbeck Healthcare Residence, LLC d/b/a Windsor Healthcare Residence ("Windsor"); Mesa Hills Healthcare Residence Operator, LLC d/b/a Mesa Hills Healthcare Residence ("Mesa Hills SNF"); Plano Healthcare Residence Operator, LLC d/b/a Heritage Manor Healthcare Center ("Plano SNF"); Mesa Hills Specialty Hospital Operator, LLC ("Mesa Hills LTACH"); Plano Specialty Hospital Operator, LLC ("Plano LTACH"); and

1

Specialty Hospital of Midwest City Operator, LLC ("Midwest City LTACH") (collectively, "Defendants")[1] and Plaintiffs Pharmacy Corporation of America d/b/a PharMerica, PharMerica Long-Term Care LLC d/b/a PharMerica, and PharMerica Hospital Pharmacy Services, LLC d/b/a PharMerica (collectively, "Plaintiffs" or "PharMerica"), each of which contain Agreed Orders of Judgment.

In 2014 and 2015, Plaintiffs contracted with Concord, the SNF Defendants, and the LTACH Defendants to provide pharmacy-related goods and services to the residents of the facilities operated by the SNF and LTACH Defendants. (Tomassetti Aff. ¶¶ 3-4, DN 5-4). A billing dispute arose, and Defendants failed to pay Plaintiffs for goods and services invoiced, so the parties began negotiating to resolve the matter.[2] (Nueman Aff. ¶ 6, DN 15-1; Tomassetti Aff. ¶ 5). As a result of their negotiations, on April 27, 2016 (the "Settlement Date"), Plaintiffs executed two settlement and forbearance agreements: one with Concord and the SNF Defendants (the "SNF Settlement Agreement"), and the other with Concord and the LTACH Defendants (the "LTACH Settlement Agreement") (the SNF Settlement Agreement and the LTACH Settlement Agreement are jointly referred to as the "Agreements"). (Tomassetti Aff. ¶ 6; SNF Settlement Agreement, DN 17-2; LTACH Settlement Agreement, DN 17-1).

Under Section 5.01 of the SNF Settlement Agreement, Concord and the SNF Defendants acknowledged and agreed that they owed Plaintiffs the sum of $621,998.07 for pharmacy goods and services provided through December 31, 2015 (the "SNF Balance"). (SNF Settlement Agreement § 5.01). Under Section 5.01 of the LTACH Settlement Agreement, Concord and the

---

[1] Waco, Fairview, Manor, Western Hills, Windsor, Mesa Hills SNF, and Plano SNF are collectively referred to as the "SNF Defendants" ("SNF" stands for "skilled nursing facility"). Mesa Hills LTACH, Plano LTACH, and Midwest City LTACH are collectively referred to as the "LTACH Defendants" ("LTACH" stands for "long-term acute care hospital").
[2] Specifically, Defendants claim that Plaintiffs had overcharged and overstaffed Defendants, and failed to give preferential pricing to Defendants. (4/7/16 Letter, DN 17-12).

LTACH Defendants acknowledged and agreed that they owed the sum of $1,248,980.00 through March 31, 2016 (the "LTACH Balance"). (LTACH Settlement Agreement § 5.01). In order to settle the outstanding amounts with Concord, the SNF Defendants, and the LTACH Defendants, Plaintiffs agreed to accept $559,798.26 from Concord and the SNF Defendants and $1,030,408.50 from Concord and the LTACH Defendants; both balances were to be paid in accordance with the payment schedules attached to the Agreements. (SNF Settlement Agreement § 5.02; LTACH Settlement Agreement § 5.02). Importantly, the Agreements contained Agreed Orders of Judgment that were to be entered against Defendants if they failed to make required payments. (Tomassetti Aff. ¶¶ 14-15; SNF Settlement Agreement § 5.04; LTACH Settlement Agreement § 5.04). Section 5.04 of the Agreements provides:

> Agreed Order of Judgment. As an inducement for PharMerica to enter into this Agreement, and as a material term of this Agreement, the [Defendants] have executed and delivered to PharMerica an Agreed Order of Judgment, which is attached hereto as Attachment D. PharMerica will not file the Agreed Order of Judgment unless there is a Forbearance Default. By executing the Agreed Order of Judgment, the [Defendants] deem their signatures to constitute sufficient and proper evidence of the justness of the debt and their confession of the judgment and that no further evidence or appearance in open court is necessary before entry by the Court of, and execution upon, the Agreed Order of Judgment.

(SNF Settlement Agreement § 5.04; LTACH Settlement Agreement § 5.04).

Defendants have failed to make payments due under the Agreements since November 2016. (Tomassetti Aff. ¶ 16). In accordance with the terms of the Agreements, Plaintiffs provided notice to Defendants of their defaults and Defendants have failed to cure the defaults. ((Notice of Default, DN 5-7; Tomassetti Aff. ¶ 16). As a result, pursuant to Section 5.07 of the Agreements the entire SNF Balance and LTACH Balance, less payments made, is now due and owing with interest at 6% per annum from the Settlement Date until paid in full. (SNF Settlement Agreement § 5.07; LTACH Settlement Agreement § 5.07).

3

On January 23, 2017, Plaintiffs filed the present motion, asking the Court to enter the Agreed Orders of Judgment against Defendants. (Pls.' Mot. Entry Agreed Orders J., DN 5). Accounting for all payments by Concord and the SNF Defendants before default, Plaintiffs contend that Concord and the SNF Defendants owe Plaintiffs a principal balance of $361,001.16, plus interest. (Tomassetti Aff. ¶ 18). Accounting for all payments by Concord and the LTACH Defendants before default, Plaintiffs allege that Concord and the LTACH Defendants owe Plaintiffs a principal balance of $901,448.44, plus interest. (Tomassetti Aff. ¶ 19).[3]

Additionally, the LTACH Settlement Agreement requires Concord and the LTACH Defendants to pay for goods and services provided by Plaintiffs after March 31, 2016, in accordance with the terms of the prior contract between the parties. (LTACH Settlement Agreement § 5.03). Since March 31, 2016, Mesa Hills LTACH and Plano LTACH have received goods and services from Plaintiffs but failed to pay for them. (Tomassetti Aff. ¶ 17). According to Plaintiffs, Mesa Hills LTACH owes $100,819.00, and Plano LTACH owes $146,387.00. Plaintiffs ask the Court to enter judgments for these amounts as well. (Tomassetti Aff. ¶ 17).

After filing the present motion, Plaintiffs moved the Court to set an expedited briefing schedule on their motion and to set a hearing after the parties filed their briefs. (Pls.' Mot. Briefing Schedule & Hr'g, DN 9). The Court held a telephone conference with the parties, after which it entered an order requiring expedited briefs, and setting a hearing date. (Order, DN 13). Defendants timely filed their response, contending that Plaintiffs' motion should be denied

---

[3] After the hearing held on March 28, 2017, Plaintiffs filed a Proposed Order of Partial Judgment (DN 19) containing updated interest calculations. As of March 28, 2017, Concord and the SNF Defendants owe $19,879.79 in interest, plus interest at the rate of $59.34 per day from March 29, 2017. As of March 28, 2017, Concord and the LTACH Defendants owe $49,461.41 in interest, plus interest at the rate of $148.18 per day from March 29, 2017.

because there is a question of material fact as to whether the Agreements were signed under duress. Defendants also assert that the sums for which Plaintiffs seek entry of judgment are inaccurate because they claimed to have made substantial payments to Plaintiffs which have not been credited. Defendants further requested an opportunity to conduct discovery regarding their duress defense, potential other defenses, and whether the conditions necessary for entry of the Agreed Orders of Judgment have been satisfied under the terms of the Agreements. (Defs.' Opp'n Pls.' Mot. Entry Agreed Orders J. 9, DN 15). Plaintiffs replied that Defendants have failed to establish that they entered the Agreements under duress, that Defendants have failed to offer any evidence showing that the amounts for which Plaintiffs seek entry of judgment are inaccurate, and that discovery is unnecessary. (Pls.' Reply Mot. Entry Agreed Orders J. 8-14, DN 17). The hearing was held on March 28, 2017 (the "hearing"). (Order, DN 18). This matter stands ripe for adjudication.

## II.     JURISDICTION

This Court has jurisdiction under 28 U.S.C. § 1332(a)(1) because there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

## III.    STANDARD OF REVIEW[4]

Federal Rule of Civil Procedure 56(a) provides that "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of

---

[4] Given that the Civil Rules make no provision for "motions to enter judgment," it appears that Plaintiffs' motion is one for summary judgment under Fed. R. Civ. P. 56(a). At the hearing Plaintiffs indicated that they have no objection to their motion being analyzed under the summary judgment standard, and the Court is unaware of any Sixth Circuit precedent holding that such an approach is improper. Therefore, the Court accepts Defendants' invitation to analyze Plaintiffs' motion under Rule 56(a).

5

material fact exists when there are "disputes over facts that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Servs. Co.*, 391 U.S. 253, 289 (1968)).

Generally, "the moving party bears the initial burden of identifying those parts of the record that demonstrate the absence of any genuine [dispute] of material fact." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) (citing *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986)). If, however, the moving party does not bear the burden of proof on the issue for which it seeks summary judgment, it may meet its burden by showing "that there is an absence of evidence to support the nonmoving party's case." *Id.* (internal quotation marks omitted) (citing *Celotex Corp.*, 477 U.S. at 325). Once the moving party shows that there is an absence of evidence to support the nonmoving party's case, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586 (1986).

In ruling on a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Moldowan*, 578 F.3d at 374 (quoting *Anderson*, 477 U.S. at 249). A court must view the evidence in the light most favorable to the non-moving party and determine whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251. "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be

insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Moldowan*, 578 F.3d at 374 (quoting *Anderson*, 477 U.S. at 252).

IV. **DISCUSSION**

The Court concludes that Defendants' have failed to raise a genuine dispute of material fact precluding entry of the Agreed Orders of Judgment: Defendants have not established genuine factual issues regarding whether they entered the Agreements under duress or regarding the amounts that Plaintiffs are owed. As the Court indicated at the hearing, however, at this point it will not enter judgment as to the claims against Concord, Mesa Hills LTACH, and Plano LTACH for goods and services invoiced to Mesa Hills LTACH and Plano LTACH after March 31, 2016, as the LTACH Settlement Agreement does not preclude dispute of charges incurred after that date. (*See* LTACH Settlement Agreement § 2.01).

A. **Duress**

"A settlement agreement is a type of contract and is governed 'by reference to state substantive law governing contracts generally.'" *Cogent Sols. Grp., LLC v. Hyalogic*, LLC, 712 F.3d 305, 309 (6th Cir. 2013) (quoting *Bamerilease Capital Corp. v. Nearburg*, 958 F.2d 150, 152 (6th Cir. 1992)). The Agreements specify they are to be governed by Kentucky law, which recognizes that contracts executed under duress are voidable at the election of the aggrieved party. *See Atmos Energy Corp. v. Honeycutt*, No. 2011-CA-000601-MR, 2013 Ky. App. Unpub. LEXIS 77, at *22 (Jan. 25, 2013) (citation omitted). "Duress is an actual or threatened violation or restraint on a man's person, contrary to law, to compel him to enter into a contract or to discharge one." *Publishers Press, Inc. v. Montage Media Corp.*, No. 3:10-cv-068-H, 2011 U.S. Dist. LEXIS 112750, at *6 (W.D. Ky. Sept. 30, 2011) (internal quotation marks omitted)

7

(quoting *Bond State Bank v. Vaughn*, 44 S.W.2d 527, 528 (Ky. 1931)). The threat must exert such strong influence on the person claiming duress "that his acts are not the result of his own will." *Id.* (internal quotation marks omitted) (quoting *Bond State Bank*, 44 S.W.2d at 529). Furthermore, in *Redmon v. McDaniel*, 540 S.W.2d 870 (Ky. 1976), the Kentucky Supreme Court stated that "[t]he general rule . . . is to the effect that it is not duress to threaten to do what one has a legal right to do, nor is it duress to threaten to take any measure authorized by law and the circumstances of the case." *Id.* at 872. The court further elaborated that "[a] mere threat to exercise a legal right made in good faith is neither duress nor coercion in law. A threat may be said to be made in good faith if made in the honest belief that valid grounds exist to justify the action threatened." *Id.* (internal quotation marks omitted) (quoting *Pleuss v. City of Seattle*, 504 P.2d 1191, 1194 (Wash. Ct. App. 1972)).

Defendants' duress argument stems from a letter sent by Plaintiffs to Defendants during settlement negotiations.[5] On April 4, 2016, Plaintiffs sent a letter to Defendants conveying Plaintiffs' "last, best, and final" settlement offer. (4/4/16 Letter, DN 17-9). After noting that the parties had negotiated for over three months by that point, Plaintiffs stated that the parties needed to resolve the outstanding debts by April 6, 2016. (4/4/16 Letter). The letter further stated that if Defendants did not agree to the terms of the proposed settlement agreements, then:

> PharMerica will (1) immediately contact the applicable Departments of Health/Departments of Pharmacy/DEA so that PharMerica can cease servicing the LTACHs, to ensure the transition is done in compliance with all laws, *and to confirm the relevant agencies are aware of the large debts the LTACHs owe to PharMerica*; and (2) will immediately initiate litigation(s) [against the Defendants].

(4/4/16 Letter (emphasis added)).

---

[5] All of these communications occurred between respective counsel for Plaintiffs and Defendants.

Defendants seize upon the italicized language, casting it as disparaging, defamatory, and improperly threatening.[6] The factual substance of the statement was not defamatory, however, because it is true: as outlined above Defendants indeed owed Plaintiffs a significant sum of money. *See Smith v. Martin*, 331 S.W.3d 637, 640 (Ky. App. 2011) ("A claim of defamation may be defeated by establishing the truth of the matter asserted which is an absolute defense."). Second, even if the statement could be viewed as improper or made in bad faith, Defendants have failed to establish duress. Defendants contend that there is "significant evidence" suggesting that Plaintiffs' threats caused them to sign the Agreements against their will, as set forth in an affidavit from Concord's CEO, in which he states:

> I signed these documents because I feared that if I did not, PharMerica would make good on its threat to contact regulatory agencies for the purpose of disparaging Concord and the other named defendant operators, which could result in undue regulatory scrutiny and possible additional repercussions up to and including revocation of the licenses of our facilities and cessation of business.

(Neuman Aff. ¶ 8; Defs.' Opp'n Pls.' Mot. Entry Agreed Orders J. 8).

Despite this contention, it is clear that Defendants did not sign the proposed settlement agreements accompanying Plaintiffs' April 4, 2016, letter; instead, Defendants continued negotiating for better terms. On April 5, 2016, Defendants emailed Plaintiffs "a last counter offer in hopes of settling this matter," which proposal was a $300,000 discount off what the LTACH Defendants owed for goods and services, paid as 5% down and the remainder over two

---

[6] Defendants do not address the remainder of the April 4 letter in their opposition, but it was discussed at the hearing. Defendants conceded that Plaintiffs' statement that "PharMerica will immediately contact the applicable Departments of Health/Departments of Pharmacy/DEA so that PharMerica can cease servicing the LTACHs, to ensure to the transition is done in compliance with all laws" could not serve as a basis for a duress claim. The second enumerated prong of the letter—that PharMerica would "immediately initiate ligation(s) [against the Defendants]—likewise cannot serve as a basis for duress since Plaintiffs were entitled to sue Defendants for monies owed. *See Northcutt v. Highfill*, 9 S.W.2d 209, 210 (Ky. 1928) (citing *Posey v. Lambert-Grisham Hardware Co.*, 247 S.W. 30 (Ky. 1923)).

years at 0% interest. (4/5/16-4/6/16 Email Chain, DN 17-10). Plaintiffs declined the offer. (4/16/16 Email, DN 17-11). On April 7, 2016, Defendants sent a letter reiterating the April 5 counter-offer and stating that Plaintiffs' intention to contact regulatory agencies was "nonsensical" and that the "only logical explanation" for Plaintiffs to do so would be "to attempt to ruin [Defendants'] reputation and bully them into an agreement that is beneficial only to PharMerica." (4/7/16 Letter). The next day Plaintiffs responded, stating:

> [A]s I have explained previously, PharMerica intends to do the following: (1) contact the applicable Departments of Health/Departments of Pharmacy/DEA so that PharMerica can cease servicing the LTACHs and to ensure that the transition is done in compliance with all laws and (2) initiate ligation(s) for the entire outstanding amounts owed for pharmacy goods and services provided to both the skilled nursing facilities and the LTACHs . . . .
>
> [Y]ou complain that PharMerica's reasons for calling state or federal regulatory agencies are "nonsensical." However, PharMerica intends to terminate the services being provided. In doing so, PharMerica simply wants to make sure that it complies with any applicable regulations and to request guidance in transitioning out of the facilities so as not to jeopardize patient care. PharMerica is not attempting to ruin the Concord Entities' reputations, but only to ensure that its own actions are both lawful and safe for the affected patients. Contacting government agencies in doing so is absolutely permissible, and is not a sign of bad faith at all.

(4/8/16 Letter, DN 17-13). Defendants still refused Plaintiffs' demands. On April 18, 2016, Plaintiffs sent letters to each of the LTACH Defendants notifying them that they would stop servicing certain entities. (4/18/16 Letters, DN 17-14). The following day, Defendants sent an email indicating they were "preparing to file TROs to halt the withdrawal process . . ." but attempting "one last time to try to settle this to save costs." (4/19/16 Email, DN 17-15). Defendants further explained, "we have made what we believe are very reasonable offers, and PharMerica has not agreed. So, at this point, I will just ask if settlement is still an option and if yes, what would be PharMerica's proposed terms for now and the long term re-payment?" (4/19/16 Email).

Subsequently, the parties continued negotiations until they cut the deal embodied in the LTACH Settlement Agreement, which was executed along with the SNF Settlement Agreement. The terms of the LTACH Settlement Agreement were more beneficial to Concord and the LTACH Defendants than the terms presented by Plaintiffs in the April 4, 2016, letter. (*Compare* LTACH Settlement Agreement §§ 5.01-.02, *with* 4/4/16 Letter 8). While Plaintiffs had previously been willing to agree only to a 15% discount on outstanding invoices, totaling just under $150,000, the LTACH Settlement Agreement provides for a 17.5% discount, totaling more than $218,500. (*Compare* LTACH Settlement Agreement §§ 5.01-.02, *with* 4/4/16 Letter 8). Further, the LTACH Settlement Agreement allowed for payment over 18 months, as opposed to the 12 months Plaintiffs previously offered. (*Compare* LTACH Settlement Agreement § 5.02, *with* 4/4/16 Letter 8).

These facts completely undermine Defendants' duress argument. Plaintiffs' April 8 letter made clear that they were not seeking to damage Defendants' reputation by contacting government agencies, but to ensure only that their own actions were both lawful and safe for patients. Plaintiffs' previous threat to tell the government agencies about "the large debts the LTACHs owe to PharMerica" is totally absent from the April 8 letter, which specifically promised only legitimate bases for communicating with regulators in response to Defendants' claim of bad faith and bullying.

Moreover, Defendants declined to execute the settlement agreement Plaintiffs sent with their April 4 correspondence which Defendants characterized as threatening disparagement. Instead, the parties continued negotiating and ultimately Defendants obtained a significantly better deal several weeks later. Under these circumstances, no reasonable jury could conclude that Plaintiffs' April 4 letter deprived Defendants of their free will and compelled them to enter

11

into the Agreements on April 27.[7] *See Keeling v. Jefferson Cty. Bd. of Educ.*, No. 2002-CA-000528-MR, 2003 Ky. App. Unpub. LEXIS 628, at *15 (Apr. 11, 2003) ("[Plaintiff's] voluntary action, taken after consultation with [an advisor] and full disclosure of the agreement and its consequences, undermines her claim of duress."); James O. Pearson, Jr., Annotation, *Economic Duress or Business Compulsion in Execution of Promissory Note*, 79 A.L.R. 598 (2017) (citing *Holmes v. Clark*, 118 S.W.2d 758 (Ky. 1938) and noting that "the court, in holding that no duress was established, emphasized that the payee had given the maker three days in which to act and that they had discussed the matter among themselves during such period."). Having subsequently extracted more favorable terms and received Plaintiffs' assurance that any communication with regulators would be solely for legitimate purposes, Defendants' claim of duress related to the April 4 letter is without merit.

For these reasons, the enforcement of the Agreements is not precluded by duress. The Court will a judgment in favor of Plaintiffs.

**B.     Amounts Owed Under Settlement Agreements**

In their opposition to Plaintiffs' motion, Defendants suggested that the amounts Plaintiffs request are inaccurate, explaining that they "have made substantial payments to PharMerica that are not accurately credited by PharMerica." (Neuman Aff. ¶ 10). Along with their motion, Plaintiffs submitted an affidavit from Berard Tomassetti ("Tomassetti"), Senior Vice President and Chief Accounting Officer for PharMerica Corporation, Plaintiffs' parent company. In his

---

[7] In any event, Plaintiffs never made any threats to contact any government agencies regarding the SNF Defendants or their debts to Plaintiffs. Plaintiffs' counsel explicitly stated in the April 4, 2016, letter that they would be contacting the state agencies so that they can "cease servicing the ***LTACHs*** . . . and to confirm the relevant agencies are aware of the large debts the ***LTACHs*** owe to PharMerica." (*See* 4/4/16 Letter (emphasis added)). Given that Plaintiffs only stated they would be contacting the state regarding the LTACH Defendants, Plaintiffs have no claim that the SNF Defendants signed the SNF Settlement Agreement under "duress" from Plaintiffs' threatened actions.

affidavit, Tomasseti provided a one-page spreadsheet for each Agreement showing all payments made by Defendants after the execution of the Agreements. (Tomassetti Aff. Exs. 1-2). At the hearing, Defendants conceded that they could point to no specific payments that were missing from Tomassetti's calculations or any other miscalculation. Therefore, this argument is insufficient to prevent the Court from granting Plaintiffs' motion. *See Am. Dairy Queen Corp. v. Fortune Street Research & Writing, Inc.*, 753 F. Supp. 2d 675, 681-82 (W.D. Ky. 2010) (enforcing a liquidated damages provision where the breaching party failed to contest the amount of damages).

## V. CONCLUSION

For the reasons discussed above, Plaintiffs' Motion for Entry of Agreed Judgment (DN 5) is **GRANTED IN PART** and **DENIED IN PART** with respect to the claims against Concord, Mesa Hills LTACH, and Plano LTACH for goods and services provide by Plaintiffs after March 31, 2016. Defendants have failed to raise a genuine dispute of material fact precluding entry of the Agreed Orders of Judgment. A separate order will follow entering judgments for Plaintiffs in the amounts owed by Defendants under the Settlement Agreements.

cc: counsel of record