UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:17-CV-00037-GNS


PHARMACY CORPORATION OF
AMERICA, et al.                                                          PLAINTIFFS


v.


CONCORD HEALTHCARE GROUP,
LLC, et al.                                                             DEFENDANTS


## MEMORANDUM OPINION & ORDER

This matter is before the Court upon Plaintiffs' Motion for Attorney Fees (DN 25). For

the reasons discussed below, the motion is **GRANTED IN PART** and **DENIED IN PART**.

Plaintiffs are **GRANTED** leave to file additional documentation.

## I.     BACKGROUND

This action arises out of a billing dispute between Defendants Concord Healthcare

Group, LLC ("Concord"); Waco Healthcare Residence, LLC d/b/a Crestview Healthcare

Residence; Fairview Operations, LLC d/b/a Fairview Healthcare Residence; Manor Nursing &

Rehab Center, LLC d/b/a The Manor Healthcare Residence; Western Hills Nursing & Rehab

Center, LLC d/b/a Western Hills Healthcare Residence; Groesbeck Healthcare Residence, LLC

d/b/a Windsor Healthcare Residence; Mesa Hills Healthcare Residence Operator, LLC d/b/a

Mesa Hills Healthcare Residence; Plano Healthcare Residence Operator, LLC d/b/a Heritage

Manor Healthcare Center; Mesa Hills Specialty Hospital Operator, LLC; Plano Specialty

Hospital Operator, LLC; and Specialty Hospital of Midwest City Operator, LLC (collectively,

"Defendants")[1] and Plaintiffs Pharmacy Corporation of America d/b/a PharMerica; PharMerica Long-Term Care LLC d/b/a PharMerica; and PharMerica Hospital Pharmacy Services, LLC d/b/a PharMerica (collectively, "Plaintiffs" or "PharMerica").

In 2014 and 2015, Plaintiffs contracted with Concord, the SNF Defendants, and the LTACH Defendants to provide pharmacy-related goods and services to the residents of the facilities operated by the SNF and LTACH Defendants (the "Services Agreements"). (Tomassetti Aff. ¶¶ 3-4, DN 5-4). A billing dispute led Defendants to stop paying Plaintiffs for goods and services provided under the Services Agreements.[2] The parties negotiated and, ultimately, executed two settlement and forbearance agreements: one between Plaintiffs, Concord, and the SNF Defendants (the "SNF Settlement Agreement") and another between Plaintiffs, Concord, and the LTACH Defendants (the "LTACH Settlement Agreement").[3] (Nueman Aff. ¶ 6, DN 15-1; Tomassetti Aff. ¶¶ 5-6; SNF Settlement Agreement, DN 25-3; LTACH Settlement Agreement, DN 25-4).

Under Section 5.01 of the SNF Settlement Agreement, Concord and the SNF Defendants acknowledged and agreed that they owed Plaintiffs $621,998.07 for pharmacy goods and services provided through December 31, 2015 (the "SNF Balance"). (SNF Settlement Agreement § 5.01). Under Section 5.01 of the LTACH Settlement Agreement, Concord and the LTACH Defendants acknowledged and agreed that they owed $1,248,980.00 for pharmacy goods and services provided through March 31, 2016 (the "LTACH Balance"). (LTACH

---

[1] Waco, Fairview, Manor, Western Hills, Windsor, Mesa Hills SNF, and Plano SNF are collectively referred to as the "SNF Defendants" ("SNF" stands for "skilled nursing facility"). Mesa Hills LTACH, Plano LTACH, and Midwest City LTACH are collectively referred to as the "LTACH Defendants" ("LTACH" stands for "long-term acute care hospital").
[2] Specifically, Defendants claim that Plaintiffs had overcharged and overstaffed Defendants, and failed to give preferential pricing to Defendants. (4/7/16 Letter, DN 17-12).
[3] These agreements contain nearly identical terms and are jointly referred to as the "Agreements."

Settlement Agreement § 5.01). In order to settle the outstanding amounts with Concord, the SNF Defendants, and the LTACH Defendants, Plaintiffs agreed to accept $559,798.26 from Concord and the SNF Defendants and $1,030,408.50 from Concord and the LTACH Defendants; both balances were to be paid in accordance with the payment schedules attached to the Agreements. (SNF Settlement Agreement § 5.02; LTACH Settlement Agreement § 5.02). However, in the event Defendants failed to make payments in accordance with the payment schedules, the outstanding SNF Balance and LTACH Balance, rather than the reduced amounts, would become due. (SNF Settlement Agreement § 5.07; LTACH Settlement Agreement § 5.07). Moreover, the Agreements contained Agreed Orders of Judgment for the outstanding SNF and LTACH balances that Plaintiffs were entitled to have entered against Defendants upon default. (SNF Settlement Agreement § 5.04; LTACH Settlement Agreement § 5.04; Agreed Orders J., DN 25-5).

Defendants repeatedly failed to make payments due under the Agreements. (Stinnett Aff. 4-7, DN 25-2). When further attempts at reconciliation proved fruitless, (*See* Stinnett Aff. 4-7), Plaintiffs filed this action, moving the Court to enter the Agreed Orders of Judgment against Defendants, as well as judgment against Concord, Mesa Hills LTACH, and Plano LTACH for amounts allegedly owed for goods and services invoiced after March 31, 2016. (*See* Compl. DN 1; Pls.' Mot. Entry Agreed Orders J., DN 5). The Court partially granted Plaintiffs' motion, entering the Agreed Orders of Judgment against Defendants for the amounts still owed on the SNF and LTACH balances ($361,001.16 and $901,448.44, respectively) plus interest, but declining to grant relief at that point on Plaintiffs claims against Concord, Mesa Hills LTACH, and PLANO LTACH for goods and services invoiced after March 31, 2016. (Mem. Op. & Order 13, DN 22; Order Partial J., DN 24).

In their present motion, Plaintiffs argue that, under the terms of the Settlement Agreements and Agreed Orders of Judgment, they are entitled to $72,922.50 in attorney fees and $1,685.38 in costs, which they incurred between October 2015 and April 2017 in attempting to collect the amounts owed by Defendants for goods and services provided under the Services Agreements, i.e., the SNF and LTACH balances. Plaintiffs also maintain that they are entitled to future attorneys' fees and costs incurred as they attempt to enforce the judgment entered by the Court. Defendants responded to Plaintiffs' motion arguing that Plaintiffs are not entitled to recover attorneys' fees and costs at all and, even if they were, recovery is limited to fees and costs incurred in enforcement and collection efforts following Defendants' default of the Settlement Agreements. Additionally, Defendants argue that, assuming Plaintiffs are even entitled to recover fees and costs incurred post-default of the Settlement Agreements, the amount of fees and costs they seek must be discounted. Plaintiffs replied. The matter is ripe for decision.

## II.      JURISDICTION

The Court has jurisdiction over Plaintiffs' claims because there is diversity of citizenship among the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a)(1).

## III.      DISCUSSION

The Settlement Agreements and corresponding Agreed Orders of Judgment entitle Plaintiffs to all reasonable attorneys' fees and costs incurred in attempting to collect the outstanding SNF and LTACH balances. In Kentucky, a party can recover attorneys' fees when a specific contractual provision so provides. *Aetna Cas. & Sur. Co. v. Commonwealth*, 179 S.W.3d 830, 842 (Ky. 2005) (citation omitted); *Secura Ins. Co v. Gray Constr., Inc.*, 717 F.

Supp. 2d 710, 722 (W.D. Ky. 2010).[4]   Here, the Settlement Agreements contain identical

provisions regarding the recovery of attorneys' fees and costs from a defaulting party, which

provide as follows:

> All parties shall pay their own costs and legal fees to date. However, upon a
> Settlement Default, [Defendants] promise to pay to PharMerica all reasonable
> costs and expenses of collection, including but not limited to, reasonable
> attorneys' fees and court costs. This includes any costs and expenses in any action
> or proceeding, including but not limited to, reasonable fees and disbursements of
> attorneys incurred after a Settlement Default, but before such action or proceeding
> is commenced, whether the action or proceeding is at law, in equity or in any
> bankruptcy case or proceeding.

(SNF Settlement Agreement § 6.04; LTACH Settlement Agreement § 6.04).   Meanwhile, the

Agreed Orders of Judgment, which were attached to and a part of the Settlement Agreements,

provide:

> IT IS HEREBY FURTHER ORDERED AND ADJUDGED that PharMerica shall
> be entitled to all reasonable attorneys' fees and costs in the collection or
> enforcement of this Judgment, including but not limited to all reasonable
> attorneys' fees and costs incurred before the Agreement was executed, and all
> reasonable attorneys' fees and costs incurred thereafter.

(Agreed Orders of Judgment 1-2, 5-6).   The terms of the Settlement Agreements clearly entitle

Plaintiffs to attorneys' fees and costs.   Defendants have no basis for their argument otherwise.

Defendants' argument that Plaintiffs are not entitled to attorneys' fees incurred before

Defendants defaulted on the Settlement Agreements is also unpersuasive.   "[S]ettlement

agreements are a type of contract and therefore are governed by contract law . . . ."   *Frear v.

P.T.A. Indus., Inc.*, 103 S.W.3d 99, 106 (Ky. 2003) (internal quotation marks omitted) (citation

omitted).   "The cardinal rule in the interpretation of contracts is to ascertain the intention of the

parties and to give effect to that intention."   *Jones v. Riddell*, 5 S.W.2d 1077, 1078 (Ky. 1928).

---

[4] The Settlement Agreements are governed by Kentucky law.   (SNF Settlement Agreement §
6.07; LTACH Settlement Agreement § 6.07).

In so doing, courts must construe the contract "as a whole, giving effect to all parts and every word in it if possible." *City of Louisa v. Newland*, 705 S.W.2d 916, 918 (Ky. 1986). Likewise, "[a]n interpretation of a contract that gives meaning to all of its provisions is favored over an interpretation that renders part of it superfluous." *JSC Terminal, LLC v. Farris*, No. 5:10-CV-00040-R, 2010 U.S. Dist. LEXIS 52481, at *8-9 (W.D. Ky. May 27, 2010) (citations omitted).

The Agreed Orders of Judgment entitle Plaintiffs "to all reasonable attorneys' fees and costs in the collection or enforcement of this Judgment, including but not limited to all reasonable attorneys' fees and costs **incurred before the Agreement was executed** . . . ." (Agreed Orders J. 2, 6 (emphasis added)).[5] The word "Agreement" refers to the respective SNF and LTACH Settlement Agreements. (Agreed Orders J. 2, 5). This language completely undermines Defendants' position and supports the conclusion that Plaintiffs are entitled to all reasonable attorneys' fees and costs incurred in collecting the SNF and LTACH Balances, regardless of whether Plaintiffs incurred those expenses before or after the Settlement Agreements were defaulted upon.

Defendants maintain that the language used in Sections 6.04 of the Settlement Agreements is at odds with this conclusion. For example, they argue that "the Settlement Agreement's explicit provision that '[a]ll parties shall pay their own costs and legal fees to date'" explicitly contradicts the conclusion that Plaintiffs' are entitled to pre-Settlement Agreement fees and costs. The Court disagrees.

All along, Plaintiffs have been attempting to collect the amounts Defendants owe them for goods and services provided under the Services Agreements (the terms of which are

---

[5] Defendants reference this language in their response, contending that it supports their position. Defendants, however, conveniently omitted the clause "including but not limited to all reasonable attorneys' fees and costs incurred before the Agreement was executed." (*See* Defs.' Resp. 6, DN 41). They have made no attempt to address the import of this clause.

incorporated into the respective SNF and LTACH Settlement Agreements). The Settlement Agreements and corresponding Agreed Orders of Judgment were merely another step in Plaintiffs efforts to collect those amounts. The parties did agree in Sections 6.04 of the Settlement Agreements that each party would bear their own expense "to date." Importantly, though, this depended upon Defendants living up to their end of the bargain, as Sections 6.04 go on to provide that "*upon a settlement default*, [Defendants] promise to pay *all reasonable costs and expenses of collection*, including but not limited to reasonable attorneys' fees and costs." (SNF Settlement Agreement § 6.04; LTACH Settlement Agreement § 6.04) (emphasis added)). In light of the terms of the Settlement Agreements as a whole—Agreed Orders of Judgment included—the only reasonable conclusion is that, by failing to make the payments required by the Settlement Agreements, Defendants are back on the hook for the attorneys' fees and costs Plaintiffs have incurred, and will incur, in attempting to collect the outstanding SNF and LTACH balances. Indeed, the interpretation of the Settlement Agreements championed by Defendants would render the language of the Agreed Orders of Judgment meaningless.

The remaining language of Sections 6.04 of the Settlement Agreements in no way limits Plaintiffs to attorneys' fees and costs incurred post-Settlement Agreement. Defendants note that "the remainder of the provision specifically addresses recovery of amounts incurred after default but before the commencement of an action or proceeding." (Defs.' Resp. 8). And, according to them, "[t]his clarification would be entirely redundant if the provision that '[a]ll parties shall pay their own costs and legal fees to date' did not apply in the event of default." (Defs.' Resp. 8).

The portion of Sections 6.04 to which Defendants are referring provides that the fees and costs to which Plaintiffs are entitled to upon default include "any costs and expenses in any action or proceeding, including but not limited to, reasonable fees and disbursements of attorneys

incurred after a Settlement Default, but before such action or proceeding is commenced, whether the action or proceeding is at law, in equity or in any bankruptcy case or proceeding." (SNF Settlement Agreement § 6.04; LTACH Settlement Agreement § 6.04). The Court fails to see how this language puts a temporal limit on what fees and costs Plaintiffs can recover. Instead, the language following the phrase "including but not limited to," expands the breadth of Plaintiffs' potential recovery by clarifying that, in the event Defendants default on the Settlement Agreements and Plaintiffs are permitted to recover attorneys' fees and costs, Plaintiffs are not limited to adding subsequent fees and costs attendant to enforcing their rights in a court proceeding (i.e., through the Agreed Orders of Judgment) to the pot, but can also throw in fees and costs incurred before such an action is filed. *See Cintech Indus. Coatings, Inc. v. Bennett Indus., Inc.*, 85 F.3d 1198, 1203 (6th Cir. 1996) (recognizing that "including but not limited to" phrase is often used to mitigate the rule of ejusdem generis) (citing *Ramirez, Leal & Co. v. City Demonstration Agency*, 549 F.2d 97, 104 (9th Cir. 1976)).

Defendants argue that extrinsic evidence supports their position. But, in the absence of ambiguity, there is no room for extrinsic evidence in contract interpretation. *See 3D Enters. Contracting Corp. v. Louisville & Jefferson Cty. Metro. Sewer Dist.*, 174 S.W.3d 440, 448 (Ky. 2005) ("When no ambiguity exists in the contract, we look only as far as the four corners of the document to determine the parties' intentions." (citing *Hoheimer v. Hoheimer*, 30 S.W.3d 176, 178 (Ky. 2000))); *Davis v. Siemens Med. Sols. USA, Inc.*, 399 F. Supp. 2d 785, 792 (W.D. Ky. 2005) (citing *Frear v. P.T.A. Indus., Inc.*, 103 S.W.3d 99, 106 (Ky. 2003)). A contract is ambiguous if it is "capable of more than one different, reasonable interpretation." *Cent. Bank & Tr. Co. v. Kincaid*, 617 S.W.2d 32, 33 (Ky. 1981). As discussed, considering the language of the Settlement Agreements as a whole, the only reasonable interpretation is that Plaintiffs are

entitled to all attorneys' fees and costs incurred in collecting the SNF and LTACH balances, regardless of whether those expenses were incurred before or after the Settlement Agreements were defaulted upon.  There is no ambiguity.

Because Plaintiffs are entitled to recover attorneys' fees and costs for their pre- and post-Settlement Agreement default collection efforts, the Court must now determine whether the amounts Plaintiffs seeks are reasonable.  Defendants suggest that the Court should apply federal common law (the "lodestar method") in making this determination.  They rely on *Graceland Fruit, Inc. v. KIC Chemicals, Inc.*, 320 F. App'x 323 (6th Cir. 2007), for support.  First, *Graceland* is an unpublished decision and therefore not binding.  *United States v. Sanford*, 476 F.3d 391, 396 (6th Cir. 2007).  Second, putting aside its precedential effect, *Graceland* does not require the Court to apply federal common law.  In *Graceland*, the court noted that "the reasonableness of an award of attorneys' fees *can* be analyzed under the federal common law . . . ."  *Graceland Fruit, Inc.*, 320 F. App'x at 328 n.6 (emphasis added).  However, the court also explained that, because a contract governed by New York law established the defendant's right to attorneys' fees, "[i]t would appear that New York law should apply to the award of attorneys' fees . . . ."  *Id.*  *Graceland* merely provides, rightly or wrongly, that federal common law can be used to assess the reasonableness of an attorneys' fee award, not that it must be used.

Here, the Settlement Agreements establish Plaintiffs' right to attorneys' fees.  The Settlement Agreements are contracts governed by Kentucky law; thus, the Court will apply Kentucky law in determining a reasonable fee award pursuant to those contracts.  *McKinstry v. Genser*, No. 13-135-ART, 2014 U.S. Dist. LEXIS 109299, at *9 (E.D. Ky. 2014) (explaining that "*Graceland* conflicts with a longstanding principle in Sixth Circuit law:  State substantive law governs contract interpretation . . . ."  (citation omitted)).

The reasonableness of an attorneys' fees award is a question of law for a trial court to decide "when the attorney and/or client seeks to recover a reasonable attorney fee from an opposing or third party." *Inn-Grp. Mgmt. Servs., Inc. v. Greer*, 71 S.W.3d 125, 130 (Ky. 2002). "The trial judge is generally in the best position to consider all relevant factors and require proof of reasonableness from" the party seeking attorneys' fees. *Capitol Cadillac Olds, Inc. v. Roberts*, 813 S.W.2d 287, 293 (Ky. 1991). Ultimately, the question is whether that party has demonstrated that "the amount sought is not excessive and accurately reflects the reasonable value of bona fide legal expenses incurred." *Id.*

Plaintiffs seek $72,922.50 in attorneys' fees. An affidavit submitted by Plaintiffs sets out the work performed by their attorneys. (Stinnett Aff. 1-9). It also contains a detailed spreadsheet that provides each task performed by each of Plaintiffs' attorneys, the time it took to complete each task, and the amount charged for each task. (Stinnett Aff. 25-53). The tasks outlined in the affidavit and corresponding spreadsheet were performed as part of Plaintiffs' prolonged effort to collect the substantial amounts of money Defendants owe them. No task appears to be an unreasonable use of time.[6] Furthermore, upon review of the affidavit and spreadsheet, the Court does not believe that Plaintiffs' attorneys spent an unreasonable amount of time on any task. And the rates charged by Plaintiffs' attorneys were the rates normally charged to and paid by PharMerica and its affiliates and are within the range of what is commonly

---

[6] Plaintiffs' attorneys' work can be outlined briefly as follows: In October 2015, they began negotiating with Defendants to collect past due amounts for goods and services provided under the Services Agreements. After months of negotiations, they obtained the Settlement Agreements. Plaintiffs' attorneys then monitored Defendants' compliance with those agreements. When Defendants failed, on multiple occasions, to make payments under the Settlement Agreements, they further negotiated with Defendants and prepared multiple default letters. Ultimately, in January 20, 2017, they initiated this lawsuit on Plaintiffs' behalf. A couple of months later, after briefing and oral argument, the Court awarded Plaintiffs a substantial judgment.

charged in Louisville, Kentucky, for commercial litigation attorneys. (Stinnett Aff. 12).[7] The attorneys' fees that Plaintiffs seek are less than 6% of the principal balance of the judgments entered by this Court. Those judgments do not include the payments that Defendants made to Plaintiffs after they retained counsel but prior to this litigation, which payments total more than $2 million. (*See* Stinnett Aff. 9). Given the amounts at stake and concerns over Defendants' solvency, the attorneys' fees Plaintiffs have incurred to date are not excessive or unreflective of the reasonable value of bona fide legal expenses incurred.

Plaintiffs also seek $1,685.38 in costs. These costs include, among other things, filing fees, FedEx delivery fees for notices and demands sent to Defendants, fees for legal research and record searches, fees for telephonic conference calls, and copying expenses. (Stinnett Aff. 54). Upon review of the affidavit submitted by Plaintiffs, the Court finds this amount to be reasonable as well.

But now we reach an impasse. In the proposed order Plaintiffs tendered with their motion, Plaintiffs ask the Court to award "judgment against Defendants, *jointly and severally*, for the amount of their reasonable attorneys' fees and costs . . . ." (Proposed Order, DN 25-6 (emphasis added)). However, there is no basis for holding Defendants jointly and severally liable. The Settlement Agreements are what allow Plaintiffs to recover attorneys' fees and costs, and any such recovery is constrained by the terms of those agreements. In the SNF Settlement Agreement, Concord and the SNF Defendants agreed that Plaintiffs could recover from them attorneys' fees and costs incurred in collecting the SNF Balance in the event of default. In the LTACH Settlement Agreement, Concord and the LTACH Defendants agreed that Plaintiffs

---

[7] Defendants do not dispute this in their response.

could recover from them attorneys' fees and costs incurred in collecting the LTACH Balance in the event of default.

It is apparent that Concord is liable for all attorneys' fees Plaintiffs incurred in collecting the SNF and LTACH balances. No further accounting is needed as to Concord. The Court will assess the entire balance of Plaintiffs' attorneys' fees and costs against it.

The same cannot be done in regards to the SNF Defendants and LTACH Defendants. The SNF and LTACH Defendants are only liable for the attorneys' fees and costs incurred by Plaintiffs' in collecting their respective debts, and Plaintiffs have made no effort to quantify what fees and costs they incurred in collecting the SNF Balance versus those incurred in collecting the LTACH Balance.[8] The Court will not do Plaintiffs' work for them and thus cannot assess attorneys' fees and costs against the SNF and LTACH Defendants at this juncture. Additional documentation is needed.

## IV.    CONCLUSION

Plaintiffs are entitled to attorneys' fees and costs they have incurred, and will incur, in their collection efforts and the amount of fees and costs they have incurred to date is reasonable. Under the terms of the Settlement Agreements, Concord shall pay Plaintiffs all such attorneys' fees and costs that Plaintiffs have incurred ($74,607.88) and will incur, in their collection efforts. However, Plaintiffs have failed to quantify how much of those fees and costs the SNF Defendants and LTACH Defendants owe separately. Accordingly, **IT IS HEREBY ORDERED** that Plaintiffs' Motion for Attorney Fees (DN 25) is **GRANTED IN PART** and **DENIED IN PART**. If Plaintiffs wish to hold the SNF or LTACH Defendants liable for the attorneys' fees and costs they owe, Plaintiffs shall file additional documentation within 10 days

---

[8] Defendants have not addressed this issue.

of this opinion's entry that quantifies what they owe.  If no additional documentation is filed by Plaintiffs within 10 days, this order shall become final and appealable.

**Greg N. Stivers, Judge**
**United States District Court**

August 23, 2017

cc:      counsel of record